IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SCOTT WYSSLING, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CHAD SWENSEN, an individual; VALKYRIE BRANDS, LLC, a Delaware limited liability company; VALKYRIE GROUP, LLC, a Utah limited liability company; VALKYRIE GROUP, LLC, a Delaware limited liability company; and DOES 1–99,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS AND DEFAULT JUDGMENT**<br><br>Case No. 2:23-cv-00344-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Before the court is Plaintiff Scott Wyssling's third motion for sanctions and default judgment against Defendants Chad Swenson, Valkyrie Brands, LLC, and Valkyrie Group, LLC. (ECF No. 80). For the reasons stated below, the court grants in part and denies in part Mr. Wyssling's motion.

## BACKGROUND

Mr. Wyssling filed this fraud and conversion action on April 27, 2023, against Defendants Chad Swensen, Valkyrie Brands, LLC, Valkyrie Group, LLC (Utah), Valkyrie Group, LLC (Delaware), and Does 1–99, alleging that the Defendants had inflated their projected

values and omitted and concealed losses to induce Mr. Wyssling to invest $2,000,000 in the

Valkyrie entities, money which Mr. Swenson has instead used for his personal benefit. (See

Compl., ECF No. 5-1; Pl's. Second Mot. Sanctions & Default J., ECF No. 55 at 10–12.) For

context, the court reiterates the case's procedural history, as described in the court's January 17,

2025 Order (ECF No. 62) on Mr. Wyssling's second motion for default judgment and sanctions.

(ECF No. 55.)

This case has moved slowly due to the parties' mutual delays, failed settlement

negotiations, and discovery disputes, as well as the Defendants' more recent failure to appoint

and retain counsel or meaningfully participate in or comply with their discovery obligations. On

June 1, 2023, the court ordered the parties to propose a case schedule. (Order dated June 1,

2023, ECF No. 11.) The next day, the Defendants filed their Answer. (ECF No. 12.) Mr.

Wyssling served the Defendants with written discovery requests shortly thereafter, on July 9,

2023. (E.g., Pl.'s Second Mot. Compel, ECF No. 45 at 1.) But discovery stalled while the

parties entered their first round of settlement negotiations. (Id.)

On October 31, 2023, having still not received the parties' proposed scheduling order, the

court set a status conference for November 28, 2023, at which the parties explained that their

months-long settlement negotiations had broken down. The parties submitted their first

proposed scheduling order on December 7, 2023 (ECF No. 28), which the court entered. (Sched.

Order dated Dec. 11, 2023, ECF No. 37.)

The Defendants served their initial responses and objections to Mr. Wyssling's discovery

requests on February 16, 2024, refusing to respond or produce documents and objecting to the

requests as overbroad. (Defs.' Discovery Responses & Objections, ECF No. 41-1; Pl.'s First

Mot. Compel, ECF No. 41 at 2.) Mr. Wyssling made several failed attempts to schedule a meet

and confer with the Defendants' original attorneys regarding their discovery responses, eventually scheduling a meeting for April 17, 2024.  (ECF No. 41 at 2.)  But no progress was made at the April 17, 2024 meet and confer because the Defendants' counsel informed Mr. Wyssling that he had been replaced by substitute counsel and therefore lacked the authority to confer.  (Id.; see also Defs.' Substitution of Counsel, ECF No. 39.)  After the Defendants' second attorney, Jeremy Adamson, made his appearance (ECF No. 39), the parties renewed their settlement efforts, which ended with a failed mediation in June 2024.  (ECF No. 41 at 2.)

In July 2024, more than a year after this case was filed, the parties resumed discovery. Mr. Adamson at first advised Mr. Wyssling's counsel that he lacked client authorization to supplement the Defendants' discovery responses.  But then Mr. Adamson promised to serve the Defendants' supplemental responses by August 9, 2024.  (ECF No. 41 at 2.)  Before the Defendants had the opportunity to serve supplemental responses, Mr. Wyssling filed his first motion to compel on July 27, 2024 (ECF No. 41), which the court denied as a "waste of both the parties' resources and the court['s]."  (Order Denying Mot. Compel dated Aug. 2, 2024, ECF No. 44.)  The Defendants provided supplemental responses to Mr. Wyssling's discovery requests on August 9, 2024, promising that the Defendants would produce responsive documents.  (ECF No. 45-2.)  When he did not receive the bulk of these documents, Mr. Wyssling filed a second motion to compel the Defendants' discovery responses on August 26, 2024.  (Second Mot. Compel, ECF No. 45.)  On August 29, 2024, Mr. Adamson moved to withdraw as the Defendants' counsel (ECF No. 46), which the court allowed, directing the Defendants to obtain new counsel within 21 days in accordance with the court's local rules.  (See Order Granting Mot. Withdraw dated September 13, 2024, ECF No. 49.)

But the Defendants violated the court's September 13, 2024 Order, failing to appoint new counsel within 21 days and also failing to update their discovery responses. On October 18, 2024, Mr. Wyssling moved for default judgment and an award of attorney's fees against Defendants Chad Swensen, Valkyrie Brands, LLC, and Valkyrie Group, LLC, and once again requested the court order the Defendants to respond to Mr. Wyssling's discovery requests. (First Mot. Default J., ECF No. 50.) On November 5, 2024, the court denied Mr. Wyssling's First Motion for Default Judgment on the basis that such a harsh penalty was not yet warranted given that the Defendants had missed just one deadline. (Order dated Nov. 5, 2024, ECF No. 54.) The court simultaneously issued an order to show cause why sanctions should not be entered against the Defendants for failure to obtain new counsel, directing the Defendants to respond within 21 days to "inform the court regarding [their] intentions to defend this matter." (Id. at 4.) The court warned that a failure to respond to the order to show cause "may result in monetary sanctions and [that] a continued failure to defend this matter will result in dispositive sanctions." The court also denied Mr. Wyssling's Second Motion to Compel, directing Mr. Wyssling to 1) narrow his discovery requests by specifying the relevant time frame and 2) work with the Defendants' new counsel to reach a resolution on the discovery dispute. The court acknowledged, however, that Mr. Wyssling's Second Motion to Compel "presents some challenge because Defendants still lack counsel." (Id. at 3–4.)

The Defendants nonetheless failed to obtain new counsel, nor did they respond to the court's November 5, 2024 order to show cause. Accordingly, Mr. Wyssling submitted his Second Motion for Default Judgment for $2,000,000, the amount of the investment the Defendants allegedly misappropriated, and further requested that the court grant attorney's fees

for the work associated with his motions for sanctions and default judgment and his attempts to compel the Defendants' participation in discovery.  (ECF No. 55.)

On January 3, 2025, the court scheduled an in-person hearing for January 14, 2025, on Mr. Wyssling's Second Motion for Default Judgment and Sanctions.  (ECF No. 59.)  The court emailed a notice of the hearing to Mr. Swenson's personal email account, having received Mr. Wyssling's motion for alternative service seeking permission to serve the Defendants with subpoenas by email.  (ECF No. 56.)  Shortly after receiving notice of the hearing through email, Mr. Swenson, proceeding pro se, telephoned the court to ask if he could attend the hearing by Zoom.  The court denied his request, reiterating that the hearing would be in-person.

The night before the hearing, Nathan Jepson, an attorney at Ray Quinney & Nebeker, called to inform the court that he was running conflict checks to see if he could represent all Defendants.  Mr. Jepson told the court that he would file a notice of limited appearance for the January 14, 2025 hearing.  Mr. Jepson did not file a notice of limited appearance in advance of the hearing, but did appear on the Defendants' behalf and explained to the court that he was appearing on the Defendants' behalf for the purpose of the January 14, 2025 hearing only and would subsequently file a notice of appearance by no later than January 21, 2025, if he found that there were no conflicts.  (ECF No. 61.)  Mr. Swenson did not appear at the hearing.

On January 17, 2025, the court denied without prejudice Mr. Wyssling's Second Motion for Default Judgment and Sanctions but granted Mr. Wyssling's request for attorney's fees, directing him to file a fee application.  (ECF No. 62.)  The court again told the Defendants that they must obtain new counsel by no later than January 21, 2025, cautioning them that any further delay would likely result in the court granting default judgment.  Mr. Wyssling filed his attorney's fees application on February 3, 2025 (ECF No. 67), which the court granted on

February 19, 2025, giving the Defendants, upon their request and Mr. Wyssling's agreement, 30 days to reimburse Mr. Wyssling $11,823 in attorney's fees. (Order Granting Attorney's Fees Application dated February 19, 2025, ECF No. 70.)

Shortly thereafter, on March 11, 2025, the Defendants' third set of attorneys, including Mr. Jepson, Stephen Arroyo and Jamie Thomas, filed a motion to withdraw as counsel. (ECF No. 75.) The court held a hearing on this motion on March 17, 2025. Counsel for the Defendants explained that were they to continue to represent the Defendants, they would be forced to violate their ethical obligations. (ECF No. 78.) Specifically, Ms. Thomas explained that she had notified the Defendants repeatedly via phone calls, emails, and Zoom meetings that they were required to provide the requested discovery, but that the Defendants nonetheless refused to participate in their defense. (Id.)

The court granted the motion to withdraw on March 17, 2025. The court noted that default judgment under Rule 37 of the Federal Rules of Civil Procedure was now an appropriate sanction and ordered Mr. Wyssling to file a third motion for default judgment within 14 days that addressed liability, damages, and whether the Defendants had complied with the court's order regarding the outstanding attorney's fees. (See ECF No. 79.) Mr. Wyssling submitted his third motion for default judgment on March 28, 2025, failing to specify whether the Defendants had yet paid Mr. Wyssling's outstanding attorney's fee award. The Defendants have again failed to appoint new counsel within 21 days, violating this court's local rules. See DUCivR 83-1.4(c)(2).

## ANALYSIS

Under the Federal Rules of Civil Procedure, the court has discretion to issue sanctions, which, in extreme cases, can involve striking a defendant's answer and entering default judgment, when a party or its attorney fails to obey a scheduling or other pretrial order under

either the federal or local rules.  Fed. R. Civ. P. 16(f)(1); <u>see also</u> DUCivR 83-1.4(d); <u>Partnerco Holdings, LLC v. Nutonic Corp.</u>, No. 2:21-cv-580-JNP-DBP, 2024 WL 1307152, at *5 (D. Utah Mar. 26, 2024) (granting plaintiff's motion for default judgment and striking defendant's answer for eight month-long failure to comply with order to appoint new counsel); <u>Derma Pen, LLC v. 4everyoung Ltd.</u>, No. 2:13-cv-729-DN, 2016 WL 4532106 (D. Utah Aug. 29, 2016) (granting motion to dismiss counterclaim due to failure to appear or appoint counsel).  Of note here, this court's local rules require that the entity Defendants, as formerly represented parties, appoint new counsel within 21 days of their attorney's withdrawal.  <u>See</u> DUCivR 83-1.4(c)(2).  While there is no federal rule setting a deadline for unrepresented entities to appoint new counsel, Supreme Court and Tenth Circuit law unequivocally require that LLCs "appear in court through an attorney and not through a non-attorney corporate officer appearing pro se."  <u>Harrison v. Wahatoyas</u>, LLC, 253 F.3d 552, 556 (10th Cir. 2001); <u>see also</u> <u>Rowland v. California Men's Colony, Unit II Men's Advisory Council</u>, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel.").

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court."  <u>Cablevision of S. Connecticut, L.P. v. Smith</u>, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting <u>Shah v. New York State Dep't of Civil Serv.</u>, 168 F.3d 610, 615 (2d Cir. 1999)).  The Tenth Circuit upholds default judgments as appropriate sanctions "when a party's noncompliance is due to willfulness, bad faith, or any fault of the disobedient party and not when a party is unable to comply with a pretrial order."  <u>Klein-Becker USA, LLC v. Englert</u>, 711 F.3d 1153, 1159 (10th Cir. 2013) (internal quotation and citation omitted).  Once a defendant is found to be in default, the court

must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount

of damages." Archer v. Eiland, 64 F. App'x 676, 679 (10th Cir. 2003); see also Fed. R. Civ. P.

8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a

responsive pleading is required and the allegation is not denied.").

## I.    **Default Judgment and Attorney's Fees**

### A.  **Jurisdiction**

The court must first assess subject matter and personal jurisdiction before determining

whether a default judgment is warranted.  See Morris v. Khadr, 415 F. Supp. 2d 1323, 1331 (D.

Utah 2006).  The court has subject matter jurisdiction over this case under 28 U.S.C. § 1331

because Mr. Wyssling's second cause of action arises under the Securities Exchange Act of

1934, violations of which "fall within the exclusive jurisdiction of the federal courts."  See Cyan

v. Beaver Cnty. Emps. Ret. Fund, 583 U.S. 416, 416 (2018).  The court exercises supplemental

jurisdiction ove Mr. Wyssling's remaining causes of action, which are "are so related to claims

in the action within such original jurisdiction that they form part of the same case or

controversy."  28 U.S.C. § 1367(a).  Further, as the Defendants do not dispute, the court has

personal jurisdiction under Utah Code Ann. § 78B-3-205.

### B.  **Appropriateness of Default Judgment as Sanction**

To establish whether case-dispositive sanctions, like a default judgment, are warranted,

the Tenth Circuit recommends that courts weigh and consider factors including but not limited to

"(1) the degree of actual prejudice to the [party]; (2) the amount of interference with the judicial

process …; (3) the culpability of the litigant; (4) whether the court warned the party in advance

that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of

lesser sanctions." Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992) (internal citations

omitted); see also Purjes v. DigiNext, LLC, No. 2:19-cv-309-DBP, 2020 WL 1276970 (D. Utah Mar. 17, 2020).  "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal [or default judgment] an appropriate sanction."  Ehrenhaus, 965 F.2d at 921.  Weighing the Ehrenhaus factors here, the court finds that all five factors weigh in favor of a default judgment.

Considering the first, second, and third Ehrenhaus factors, the court finds that the Defendants have knowingly missed numerous deadlines for appointing new counsel and participating in discovery, and that such conduct has repeatedly prejudiced Mr. Wyssling by delaying the litigation of this case and increasing the burdens of litigation.  The court has been similarly burdened by the Defendants' behavior.  While both parties have, in the past, shared some mutual responsibility for delays, it is clear now that the Defendants have a pattern of deliberate disregard for the court's orders (ECF Nos. 49, 63) and the governing procedural rules. Mr. Wyssling has, in this stage of the proceeding, diligently tried to work with the Defendants to move the case forward.

The fourth Ehrenhaus factor also weighs in favor of imposing case-dispositive sanctions because the court's November 5, 2024 Order to Show Cause (ECF No. 54) specifically cautioned the Defendants that any continued failure to defend the matter "will result in dispositive sanctions."  And the court's January 17, 2024 Order reiterated that if the Defendants continued to delay the case or discovery, the court would impose dispositive sanctions.  (ECF No. 62 at 8–9.) Further, at the hearing on March 17, 2025, the Defendants' then-counsel testified that they had repeatedly discussed with the Defendants the possibility of sanctions and default judgment in the event of continued delay and noncompliance.  Accordingly, the court finds that the Defendants

have received full notice "that dismissal of the action would be a <u>likely</u> sanction for noncompliance." <u>Ehrenhaus</u>, 965 F.2d at 921 (emphasis added).

Finally, the fifth <u>Ehrenhaus</u> factor weighs in favor of imposing case-dispositive sanctions because lesser sanctions, like an award of attorney's fees coupled with clear warnings about the consequences of continued misconduct, have proven to be ineffective deterrence—indeed, the Defendants have, since the court granted a third motion to withdraw, failed to appoint new counsel within 21 days, again violating the local rules. DUCivR 83-1.4(c)(2). And, as Ms. Thomas shared at the hearing governing her motion to withdraw, the Defendants continue to refuse to participate in discovery, in violation of the court's prior orders.

### C. Liability

Because case-terminating sanctions are warranted, the court examines whether it has a sufficient basis to find liability based on the pleadings. <u>See</u> <u>Bixler v. Foster</u>, 596 F.3d 751, 762 (10th Cir. 2010) ("It remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.") (internal quotation omitted); <u>see also</u> <u>Christensen v. Johnson Smith & Assocs.</u>, No. 2:19-cv-676-BSJ, 2021 WL 66550, at *3 (D. Utah Jan. 7, 2021). Once a defendant is found to be in default, the court must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount of damages." <u>Archer</u>, 64 F. App'x at 679.

Mr. Wyssling brings six causes of action all related to the same transaction, his investment in Valkyrie Brands, LLC. The first claim is a federal question cause of action arising under the Securities Exchange Act of 1934 for violation of 17 C.F.R. § 240.10b-5 and 15 U.S.C. § 78j(b). (Compl. ¶¶ 102–108.) The Complaint also contains five state law claims arising out of the same alleged facts that form the basis for Mr. Wyssling's federal securities claim, including:

(1) fraud (id. ¶¶ 91–101); (2) negligence (id. ¶¶ 109–118); (3) conversion (id. ¶¶ 119–125); (4) unjust enrichment (id. ¶¶ 126–136); and (5) punitive damages under Utah Code Ann. §78B-8-201(1)(a)) (id. ¶¶ 137–139).  The court examines the Defendants' liability for each claim in turn.

### 1.  Common Law Fraud

To prevail on a Utah common law fraud claim, Mr. Wyssling must establish:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

Mitchell v. Wells Fargo Bank, 355 F. Supp. 3d 1136, 1160–61 (D. Utah 2018) (quoting Armed Forces Ins. Exch. v. Harrison, 70 P.3d 35, 40 (Utah 2003)).

Mr. Wyssling provides a sufficient basis in the pleadings for default judgment to be entered on his first cause of action for fraud and fraudulent inducement in violation of Utah law. The Defendants knowingly provided Mr. Wyssling with false information, including inflated current and projected value, profitability, and cash flow of the Defendant entities, the number of investors and amount of funds that had been invested in the Defendant entities, and the involvement of institutional firms such as Goldman Sachs.  (Compl. ¶ 95.)  The Defendants falsely represented to Mr. Wyssling that they had contracted with Goldman Sachs to raise investment funds, and that their Goldman Sachs advisor was already discussing company distributions, dividends, and an initial public offering.  (Id.)  The Defendants further represented that the Valkyrie accounting was being done by Price Waterhouse Coopers (PwC) and the investment transaction was being handled by the law firm of Wilson Sonsini.  (Id.)

The Defendants similarly omitted or concealed important facts, such as that several of the entity Defendants' advertised portfolio companies, including Tune Wellness and P1 Exchange,

were owned by Mr. Swensen and were also defunct, or that other advertised portfolio companies, such as Zenoc Energy, did not even exist.  (Id. ¶¶ 53–57, 85–87, 97.)

In sum, the court finds that the Defendants made knowing false representations to induce Mr. Wyssling to give the Defendants $2 million, under the guise of it being a legitimate "investment" in the Valkyrie entities.  These misrepresentations were material and relied upon by Mr. Wyssling in his decision to provide the funds.  But, in reality, Mr. Wyssling never became an actual investor.  The Defendants never provided Mr. Wyssling with complete documentation or information, and the required closing never occurred.  Instead, the Defendants took Mr. Wyssling's investment, and Mr. Swensen allegedly used the money for himself and his family, directly causing Mr. Wyssling financial losses.

## 2.  Violation of 17 CFR § 240.10b-5, and 15 USC § 78j(b).

Under 15 U.S.C. § 78j(b) of the Securities Exchange Act of 1934,

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange— … (b) To use or employ, in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

The term "security" is defined broadly to include, among other things, stocks, bonds, debt instruments, or any "instrument commonly known as a 'security.'" 15 U.S.C. § 78c(a)(10).

The Securities and Exchange Commission's (SEC) implementing regulation, 17 C.F.R. § 240.10b-5 (Rule 10b-5) further defines the scope of the Securities Exchange Act of 1934, making it

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,

12

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

As the court notes above in its analysis of Mr. Wyssling's state law fraud claim, Mr. Wyssling has sufficiently alleged that the Defendants made knowingly false misrepresentations of material facts to induce Mr. Wyssling to invest.  Portions of these discussions between the Defendants and Mr. Wyssling took place over the phone, and the Defendants emailed certain documents to Mr. Wyssling for the purpose of disseminating false information. Accordingly, Mr. Wyssling has sufficiently established that the Defendants are liable for securities fraud under the Securities Exchange Act of 1934.

### 3. Negligent Misrepresentation

A negligent misrepresentation claim requires Mr. Wyssling to establish that:

(1) [He] reasonably relied on the defendant's representation, (2) the representation constitutes a careless or negligent misrepresentation of a material fact, (3) the defendant had a pecuniary interest in the transaction, (4) the defendant was in a superior position to know the material facts, and (5) the defendant should have reasonably foreseen that the injured party was likely to rely upon the misrepresentation.

Heaton v. Am. Brokers Conduit, No. 2:11-cv-531-TS, 2011 WL 3734201, at *4 (D. Utah Aug. 24, 2011) (citing Armed Forces Ins. Exch., 70 P.3d at 4); see also Ludvik Elec. Co. v. Vanderlande Indus., Inc., No. 2:21-cv-462-DBB-CMR, 2023 WL 8789379, at *5 (D. Utah Dec. 19, 2023) (similar).  Gross negligence takes this one step further—it is "the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result." Penunuri v. Sundance Partners, Ltd., 423 P.3d 1150, 1159 (Utah 2016).  Under Utah law, "where a person makes an affirmative statement, that person has a

common-law duty to disclose all material facts necessary to prevent that statement from being

misleading." Shree Ganesh, LLC v. Weston Logan, Inc., 491 P.3d 885, 893 (Utah 2021); see

also First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1330–31 (Utah 1990)

(recognizing a common law duty to disclose matters "that [one party] knows to be necessary to

prevent [the party's] partial or ambiguous statement of the facts from being misleading") (citing

Restatement (Second) of Torts § 551, 119 (1977)).

　　　As discussed above, the Defendants knowingly provided Mr. Wyssling with false

information and omitted vital facts that were material to Mr. Wyssling's decision-making.

Further, the Complaint adequately alleges that the Defendants showed "utter indifference" to the

consequences of their misstatements, acting with knowledge that they were accepting that money

for Mr. Swensen's personal benefit—in other words, there would be no return whatsoever on Mr.

Wyssling's investment.  Accordingly, accepting the facts alleged as true, Mr. Wyssling has

established liability for each of the elements of a misrepresentation claim.

### 4.  Conversion and Theft

　　　A claim for "conversion is the civil equivalent of criminal theft," providing a civil

remedy for what is otherwise criminal conduct.  Surgenex, LLC v. Predictive Therapeutics, LLC,

462 F. Supp. 3d 1160, 1173 (D. Utah 2020) (cleaned up).  To prove a claim for conversion, Mr.

Wyssling must establish "an act of willful interference with property, done without lawful

justification, by which the person entitled to property is deprived of its use and possession," and

"is entitled to immediate possession of the property at the time of the alleged conversion."  Rand

v. KOA Campgrounds, 338 P.3d 222, 225 (Utah 2014) (quotation and citation omitted).

　　　Mr. Wyssling's claim for conversion arises out of the same facts described at length

above.  The court has already established that the Defendants made false statements and material

omissions for the specific purpose of inducing Mr. Wyssling to transfer $2,000,000.00 to the

Defendants, obtained Mr. Wyssling's money under false pretenses, and used the funds for the

personal benefit—depriving Mr. Wyssling of the use and possession of his money.  Mr.

Wyssling is therefore entitled to immediate possession of his money.

### 5.  Unjust Enrichment

To demonstrate unjust enrichment, Mr. Wyssling must establish three elements:

> (1) a benefit conferred on one person by another; (2) an appreciation or
> knowledge by the conferee of the benefit; and (3) the acceptance or retention by
> the conferee of the benefit under such circumstances as to make it inequitable for
> the conferee to retain the benefit without payment of its value.

Howard v. Manes, 309 P.3d 279, 289 (Utah 2013) (quotation and citation omitted).  As discussed

above, Mr. Wyssling's money was obtained under false pretenses.  The Defendants were aware

that these funds would not be spent as represented, and that some of these funds would be spent

for the benefit of Mr. Swensen and his family.  It is inequitable for the Defendants to keep Mr.

Wyssling's money.

### 6.  Punitive Damages under Utah Code Ann. §78B-8-201(1)(a)

Finally, Mr. Wyssling seeks punitive damages under Utah Code Ann. § 78B-8-01(1)(a)

"due to Defendants' willful, malicious, and intentionally fraudulent conduct."  (ECF No. 80 at

11.)  "The Utah Supreme Court has explained that a claim for punitive damages is not an

independent cause of action but rather a remedy for tortious conduct."  Baldwin v. Triple S

Trucking Co., No. 2:24-cv-116-DAK, 2024 WL 3624851, at *2 (D. Utah Aug. 1, 2024) (citing

Norman v. Arnold, 57 P.3d 997, 1006 (Utah 2022)).  Accordingly, the court will discuss this

claim in its discussion of damages.

### D.  Damages

The final step of the default judgment analysis is determining the amount for which the Defendants are liable.  "[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation."  Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985) (citing Venable v. Haislip, 721 F.2d 297, 300 (10th Cir. 1983)).  Otherwise, Rule 55(b)(2) permits a hearing if the court needs to "conduct an accounting" or "determine the amount of damages."

Mr. Wyssling seeks a total of $12 million in damages, providing the following cost breakdown:

- $2 million for his actual damages, the value of his investment with the Defendants;

- $1,000,000 in what he refers to as "lost opportunity costs" on his funds;

- treble damages under the Utah Pattern of Unlawful Activity Act and relevant fraud statutes totaling $9 million;[1]

- pre- and post-judgment interest on the $12 million in actual and punitive damages; and

- attorney's fees consistent with the court's January 17, 2025 sanctions order.

The court addresses each damages category in turn.

#### a.  Actual Damages

First, accepting the facts alleged as true, the court finds that it is capable of calculating Mr. Wyssling's actual compensatory damages for fraud (under either state or federal law), negligent misrepresentation, conversion and theft, and unjust enrichment, totaling $2,000,000, the amount he was fraudulently induced to "invest" with the Defendants.  Mr. Wyssling has proven that he is entitled to this amount, plus statutory pre-judgment interest, given the

---

[1] For this punitive damages figure, Mr. Wyssling appears to have tripled the sum of his actual damages and opportunity costs.

Defendants' unjust enrichment and dishonest and fraudulent conduct, outlined above, and principles of fairness and equity. E.g., Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d 1063, 1085 (10th Cir. 2008) (finding that, under federal law, pre- and post-judgment interest are generally available under compensatory principles and considerations of fairness); Anixter v. Home-Stake Prod. Co., 977 F.2d 1549, 1554 (10th Cir. 1992) (finding that courts have discretion to award pre-judgment interest as compensatory damages in securities fraud actions).

Pre-judgment interest begins to accrue from the time of Mr. Wyssling's loss—in other words, the date on which Mr. Wyssling wired funds to the Defendants. While the court is uncertain when Mr. Wyssling sent the Defendants the $2 million wire transfer, it appears to have been on or around late June 2022. Mr. Wyssling is directed to submit a calculation of his pre-judgment interest on his award for actual damages within 14 days of this order. The court notes that Mr. Wyssling will also be entitled to post-judgment interest running from the court's final judgment on liability in this claim. See Anixter, 977 F.2d at 1555 ("postjudgment interest is a creature of statute.") (citing 28 U.S.C. § 1961)).

### b. Opportunity Costs

Mr. Wyssling also seeks $1 million in "opportunity costs" related to his lost investment. The court rejects this request. As an initial matter, these damages were not pled in the Complaint. The court has no factual basis to find that the opportunity cost of not investing his $2,000,000 in some other venture cost Mr. Wyssling $1 million—nor does Mr. Wyssling provide any factual background for alternative investment opportunities he had. In any event, the court finds that Mr. Wyssling will be compensated for any lost "opportunity costs" by virtue of his

request for pre-judgment interest, damages which compensate for a plaintiff's inability to use money he is entitled to during the pendency of litigation over its return.

### c. Punitive Damages

Mr. Wyssling also seeks to "treble" (triple) his "actual damages," for a total of $9 million in punitive damages, under two Utah statutes: Utah Code Ann. § 76-10-16, the Utah Pattern of Unlawful Activity Act, and Utah Code Ann. § 78B-8-201, the punitive damages statute.  As discussed above, because the court denies Mr. Wyssling's request for lost opportunity costs, his basis for punitive damages is his actual damages of $2 million, not $3 million.  Accordingly, if the court had a basis to award treble damages, this remedy would total $6 million, not $9 million. In any event, the court discusses each statutory basis for punitive damages in turn, along with the circumstances of the Defendants' scheme, and finds that a smaller amount of punitive damages than requested are warranted.

The Utah Pattern of Unlawful Activity Act awards "twice the damages a [plaintiff] sustains," meaning two times a plaintiff's actual damages, where a defendant has been involved in the commission of "at least three episodes of unlawful activity" with "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics."  Utah Code Ann. § 76-10-1602, 1605(1).  Mr. Wyssling notably fails to specify what "unlawful activities, as defined by Utah Code Ann. § 76-10-1602(4), the Defendants were engaged in, nor does his Complaint state that he seeks damages under this Act.  In any event, the court finds, in assessing liability, that the Defendants are indeed liable for securities fraud, which is an "unlawful activity" under Utah Code Ann. § 76-10-1602(4)(h) (citing Utah Code Ann. § 61-1-1).

18

Nonetheless, the court finds that punitive damages cannot be awarded under this statute because Mr. Wyssling has also failed to cite any authorities or plead facts sufficient for the court to infer that the Defendants engaged in a pattern (including at least three episodes) of fraud. On the facts alleged, the court classifies the Defendants' misconduct as constituting a single incident of unlawful activity because the scheme, as alleged, was committed in a short period of time, affected only one victim, and included only one type of injury: Mr. Wyssling's loss of funds. See State v. Squires, 446 P.3d 581, 594 (Utah Ct. App. 2019) ("[A] single scheme may suffice to establish a pattern of unlawful activity, but when linked with a short period of time, few victims, and only one type of injury, a pattern of unlawful activity is not demonstrated."); cf. Alta Indus. Ltd. v. Hurst, 846 P.2d 1282, 1289 (Utah 1993) (finding plaintiff was entitled to damages under the Utah Pattern of Unlawful Activity Act because "[t]he findings establish that more than one hundred episodes of unlawful activity took place within a four-year period …[and] [a]ll of these episodes were interrelated, involving the same victim, similar participants, and one of two methods of commission …"). Accordingly, the court denies with prejudice Mr. Wyssling's request for damages under this statute.

Utah law also permits punitive damages awards for fraudulent conduct under Utah Code Ann. § 78B-8-201, but "only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omission of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." Utah courts require that the court analyze seven factors to assess the appropriate level of punitive damages under the statute:

> (i) the relative wealth of the defendant; (ii) the nature of the alleged misconduct; (iii) the facts and circumstances surrounding such conduct; (iv) the effect thereof

on the lives of the plaintiff and others; (v) the probability of future recurrence of the misconduct; (vi) the relationship of the parties; and (vii) the amount of actual damages awarded.

Christensen, 2021 WL 66550, at *6 (citing Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC, 285 P.3d 1219, 1223 (Utah 2012).

In weighing these seven factors, the court has discretion to determine the appropriate ratio of punitive to actual damages. See id. at *6. Nonetheless, the Utah Supreme Court, consistent with United States Supreme Court jurisprudence,[2] set guideposts for punitive damages. If the amount of punitive damages is less than $100,000, the award is considered excessive if it exceeds actual damages by a ratio of greater than 3:1. See Crookston v. Fire Ins. Exch., 817 P.2d 789, 810 (Utah 1991). And if the amount of punitive damages is greater than $100,000, "the acceptable ratio appears lower." Id.; see also Von Hake v. Thomas, 705 P.2d 766, 772 (Utah 1985) (upholding $500,000 award for punitive damages, a 1:1 ratio of punitive to actual damages); Synergetics v. Marathon Ranching Co., 701 P.2d 1106, 1113 (Utah 1985) (upholding $200,000 punitive damages award, a 0.5:1 ratio of punitive to actual damages); First Security Bank of Utah v. J.B.J. Feedyards, Inc., 653 P.2d 591, 598–99 (Utah 1982) (reducing $100,000 punitive damages award—a 3:1 ratio—to $50,000, a 2:1 ratio), modified on other grounds by Westgate Resorts, Ltd., 285 P.3d at 1219; Biesele v. Mattena, 449 P.3d 1, 9 (Utah 2019) (upholding $300,000 in punitive damages against each defendant, meaning each defendant's ratio of punitive to actual damages was 1.1:1 and 1.3:1, respectively); Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp., 850 P.2d 447, 459 (Utah 1993) (upholding as reasonable $1.8

---

[2] See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) ("When compensatory damages are substantial, then a lesser ratio [of compensatory to punitive damages], perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.").

million in punitive damages, a 0.7:1 ratio of punitive to actual damages); cf. Christenson, 2021 WL 66550, at *6 (awarding 3:1 ratio of punitive to actual damages where actual damages totaled just $16,000).

Based on the allegations in the Complaint, the court finds that the Defendants did act willfully, knowingly, and fraudulently in an effort to deceive Mr. Wyssling, and that Mr. Wyssling is therefore entitled to some amount of punitive damages. Accordingly, the court will determine the proper ratio of punitive to actual damages by considering the seven factors set forth in Christensen. Specifically, the court has no basis to analyze the relative wealth of the Defendants and determine what damages are "necessary to deter the[se] particular defendant[s] ... from repeating the prohibited conduct." Diversified Holdings, L.C. v. Turner, 63 P.3d 686, 695 (Utah 2002). The court finds there are no indications that the Defendants are likely to commit another fraud in the future. There is no apparent pattern of misconduct, nor do there appear to be multiple victims affected by this scheme. See id. at 695–96. Mr. Wyssling does not appear to be a "particularly vulnerable" victim, nor did he suffer more than the loss of money. Cf. Christensen, 2021 WL 66550, at *2, 6 (imposing larger punitive damages where victim of fraud suffered extremely painful flare-up of fibromyalgia, in addition to financial losses). And the court finds there are no "additional elements of blameworthiness" supporting more substantial punitive damages beyond "the mere fact of fraud." Diversified Holdings, L.C., 63 P.3d at 695. While engaging in fraudulent misrepresentations is "hardly admirable," Utah courts have established that a "motive of making money regardless of legal or professional duties" is not "so profoundly reprehensible as to warrant [substantial] punitive damages." Id. at 696 ("Punitive damage awards should reflect a different degree of culpability for 'garden-variety'

fraud as opposed to its more egregious forms.") And finally, there are no allegations suggesting that the Defendants' scheme involved violence or a threat of violence.  Id.

Accordingly, in view of the circumstances surrounding this fraud and the size of the court's actual damages award, the court finds it appropriate to award $1 million in punitive damages, a ratio of 0.5:1, under Utah Code Ann. § 78B-8-201.  Further, the court notes that it will not award pre-judgment interest on Mr. Wyssling's punitive damages award, as the purpose of pre-judgment interest is to compensate a plaintiff for the loss of use of funds from the time the injury occurred until the judgment date—a principle inconsistent with the purpose of punitive damages: to punish egregious misconduct and deter future misconduct.

### d.  Attorney's Fees

Finally, the court addresses Mr. Wyssling's request for attorney's fees.  Because all five Ehrenhaus factors weigh in favor of default judgment, consistent with the courts January 18, 2025 Order (ECF No. 62), the court also imposes monetary sanctions in the form of attorney's fees, recognizing that Mr. Wyssling has likely incurred significant legal costs in preparing and filing more motions as a result of the Defendants' unexcused non-compliance and delay. Accordingly, the court grants Mr. Wyssling's request for costs and attorney's fees associated with (1) his motions for default judgment and sanctions; (2) preparing for and attending the court's March 17, 2025 hearing; and (3) preparing and defending his fee application.  Within 14 days of this order, Mr. Wyssling shall file an attorney's fee application including supporting affidavits and documents.  The court also reiterates that the Defendants must (if they have not yet done so) comply with the court's February 19, 2025 Order (ECF No. 70) granting Mr. Wyssling's motion for $11,823 in attorney's fees.

### ORDER

For the foregoing reasons, the court ORDERS as follows:

1.      The court GRANTS in part and DENIES in part Mr. Wyssling's Third Motion for Default Judgment and Sanctions, as described in this order.  (ECF No. 80.)

2.      Within 14 days of this order, Mr. Wyssling shall submit a calculation of pre-judgment interest on his actual damages award.

3.      Within 14 days of this order, Mr. Wyssling shall file an attorney's fees application, including supporting affidavits and documents.

DATED this 10th day of April, 2025.

BY THE COURT:

Tena Campbell
United States District Judge